UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:24-cv-02275-AH-(SHKx) | Date | July 31, 2025 |
| Title | David Hood v. Karen Ross et al. | | |

Present: The Honorable   Anne Hwang, United States District Judge

| Yolanda Skipper | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT (DKT. NO. 63)**

Before the Court is a Motion to Dismiss Plaintiff David Hood's ("Plaintiff") Second Amended Complaint ("SAC") filed by Defendants Karen Ross, in her official capacity as Secretary of Agriculture of the California Department of Food and Agriculture; Sean A. Duryee, in his official capacity as Commissioner of the California Highway Patrol; Ryan Dallin; Pablo Guerrero; and Derrick Peterson ("Defendants"). Mot. to Dismiss, Dkt. No. 63. The matter is fully briefed and the Court heard oral argument on July 30, 2025. For the reasons below, the Court GRANTS the Motion to Dismiss.

I.   **BACKGROUND**

On January 12, 2024, Defendant Ross issued a Proclamation of Emergency Program that declared oriental fruit flies in California to be a significant threat to agriculture and the environment. SAC, Dkt. No. 61, ¶ 24. The Proclamation created a 554-square-mile boundary ("Proclamation's Search Area") within which the California Department of Food and Agriculture ("CDFA") officials can engage in a program of monitoring, treatment, and removal of fruit flies and potentially

infected fruit. *Id.* ¶ 25. Plaintiff David Hood is a homeowner whose home was within this search area. *Id.* ¶ 33.

On February 15, 2024, the San Bernardino Superior Court issued an inspection and abatement warrant that allowed the CDFA to enter private properties to inspect them for evidence of oriental fruit flies. *Id.* ¶ 37. The warrant was limited to the Proclamation's Search Area but applied only to properties within that boundary where fruit fly larvae was discovered within a certain distance. *Id.* ¶ 42; Ex. A, Dkt. No. 61-1. The warrant was not obtained specifically for Plaintiff's property and did not include any of Plaintiff's identifying information. SAC ¶¶ 46, 49.

In Spring of 2024, CDFA posted notices on Plaintiff's property requesting permission to search his property for fruit flies, which Plaintiff communicated he did not consent to. *Id.* ¶¶ 53-56. On or about April 5, 2024, Defendants Guerrero, Dallin, and Peterson entered and searched the exterior of Plaintiff's property despite Plaintiff's protest that he did not consent to the search and that the warrant was invalid. *Id.* ¶¶ 58-67. Defendant Guerrero told Plaintiff that every other property within the neighborhood had already been searched, but that Plaintiff's property was the only one that Defendants hadn't been able to access. *Id.* ¶ 64. No oriental fruit flies or "host material" were found during the inspection of Plaintiff's property. *Id.* ¶ 72.

Plaintiff brought this action against Defendants on October 25, 2024. *See* Compl., Dkt. No. 1. Plaintiff is bringing a claim under the Fourth Amendment and 42 U.S.C. § 1983 for execution of an unconstitutional general warrant against the curtilage of his home. *See generally* SAC. Plaintiff seeks nominal damages, a declaratory judgment, and prospective injunctive relief. *See id.* at Prayer for Relief. On December 9, 2024, Plaintiff filed a First Amended Complaint ("FAC"). FAC, Dkt. No. 35. Defendants brought a Motion to Dismiss Plaintiff's FAC on January 31, 2025. Mot., Dkt. No. 45. The Court granted Defendants' Motion to Dismiss Plaintiff's FAC with leave to amend. Order, Dkt. No. 53.

Plaintiff filed the SAC on May 8, 2025. SAC, Dkt. No. 61. Defendants now bring the current Motion to Dismiss Plaintiff's SAC ("Motion"), filed on May 29, 2025. Mot., Dkt. No. 63. Plaintiff filed an Opposition on June 20, 2025. Opp'n, Dkt. No. 67. Defendants filed a Reply on July 3, 2025. Reply, Dkt. No. 68.

## II. LEGAL STANDARD

### A. Federal Rule of Civil Procedure 12(b)(1)

A motion for lack of subject matter jurisdiction may be brought under Federal Rule of Civil Procedure 12(b)(1). The case or controversy requirement under Article III of the U.S. Constitution "limits federal courts' subject matter jurisdiction by requiring, inter alia, that plaintiffs have standing and that claims be ripe for adjudication." *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1121 (9th Cir. 2010) (internal punctuation and citation omitted). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 560-61 (internal punctuation and citations omitted). "Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." *Chandler*, 598 F.3d at 1122.

## III. DISCUSSION

### A. Eleventh Amendment

States and state officials sued in their official capacities are immune from claims by their own citizens in federal court under the Eleventh Amendment. *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 70-71 (1989). However, "[u]nder the *Ex parte Young* exception to that Eleventh Amendment bar, a party may seek prospective injunctive relief against an individual state officer in her official capacity." *Doe v. Regents of Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018) (citing *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000)). To determine whether the *Ex parte Young* exception applies, "a court need only conduct a straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (citation omitted). While the "line between retrospective relief and prospective relief can blur," under the Eleventh Amendment "'relief that in essence serves to

compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred…' while 'relief that serves directly to bring an end to a present violation of federal law is not barred[.]'" *Lund v. Cowan*, 5 F.4th 964, 970 (9th Cir. 2021) (citing *Papasan v. Allain*, 478 U.S. 265, 278 (1986)). "An official-capacity suit for injunctive relief is properly brought against persons who 'would be responsible for implementing any injunctive relief.'" *R. W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1223 (9th Cir. 2023) (quoting *Pouncil v. Tilton*, 704 F.3d 568, 576 (9th Cir. 2012)).

Plaintiff requests declaratory relief that (1) the warrant "is a general warrant that violates the U.S. Constitution's Fourth Amendment" and (2) "execution of such warrants against the curtilage of a home violates the U.S. Constitution's Fourth Amendment[.]" SAC at Prayer for Relief, ¶¶ 1-2. The first declaration Plaintiff seeks is the same sought in the FAC, which the Court found was barred by the Eleventh Amendment. *See* Order, Dkt. No. 53, at 4-5. The warrant expired on June 20, 2024. *Id.* ¶ 51. While Plaintiff's home remains in the Proclamation's Search Area, which expired on July 21, 2025, and Plaintiff alleges another warrant may be issued in the future, Plaintiff's first requested declaration is retrospective as it expressly relates to a specific warrant that was previously issued and expired. *See id.* ¶ 52. As such, the proposed declaratory relief seeks to correct past actions concerning the expired warrant. *See Lund*, 5 F.4th at 969. Thus, the first declaration Plaintiff seeks is barred by the Eleventh Amendment.[1]

Plaintiff has updated his second request for declaratory relief that "execution of such warrants against the curtilage of a home violates the U.S. Constitution's Fourth Amendment[.]" SAC at Prayer for Relief, ¶ 2. Plaintiff also requests that the Court "[p]ermanently enjoin Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them from enforcing against Mr. Hood's house or curtilage any general warrant of the same or substantially similar dimensions as those contained in Exhibit A." SAC at Prayer

---

[1] In his opposition, Plaintiff argues that "while the specific warrant executed against Mr. Hood has expired, the constitutional violation continues through Defendants' ongoing practice of obtaining and executing general warrants of 'substantially similar scope and dimensions.'" Opp'n at 3. However, this argument relates to the second declaration sought, not the first.

for Relief, ¶ 3. Unlike the first requested declaratory relief, these claims do seek relief characterized as prospective.[2]

Plaintiff sues Defendants Karen Ross and Sean A. Duryee in their official capacities for injunctive and declaratory relief. *Id.* ¶¶ 9, 13. Defendants Ryan Dallin, Pablo Guerrero, and Derrick Peterson are all sued in both their personal capacities for nominal damages and official capacities for injunctive and declaratory relief. *Id.* ¶¶ 12, 15, 16.

Accordingly, all Defendants are immune in their official capacities from liability for the retrospective declaratory relief claim alleged here. *See Will*, 491 U.S. at 70-71. The Court GRANTS Defendants' Motion to Dismiss as to all Defendants sued in their official capacities with respect to Plaintiff's first declaratory relief claim.

## B. Standing for Prospective Relief

"A plaintiff must demonstrate constitutional standing separately for each form of relief requested." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 967 (9th Cir. 2018). To establish standing for Plaintiff's prospective relief claims, "the threat of injury must be 'actual and imminent, not conjectural or hypothetical.'" *Id.* (citations omitted). "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a 'substantial risk' that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citing *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 410 n. 5 (2013)).

As an initial matter, Plaintiff acknowledges that he seeks prospective relief against only Defendants Ross and Duryee, and that "the SAC seeks only retrospective relief (nominal damages) against [Defendants Dallin, Guerrero, and Peterson]." Opp'n, at 7. With respect to his requests for declaratory and injunctive relief as to the execution of a similar warrant in the future, Plaintiff alleges that

---

[2] *Ex parte Young* requires that the complaint not only allege prospective relief, but also an *ongoing* violation of federal law. *See Papasan v. Allain*, 478 U.S. 265, 278 (1986) ("*Young* has been focused on cases in which a violation of federal law by a state official is ongoing as opposed to cases in which federal law has been violated at one time or over a period of time in the past."). Here, the SAC does not allege an ongoing violation of federal law, which, although a separate inquiry, the Court addresses in greater detail below.

"CDFA has obtained and executed several general warrants similar to the one at issue in this case targeting residential areas of San Bernardino," including one in 2019 "of substantially similar scope and dimensions as the one complained of in this action to search private properties and curtilages for Virulent Newcastle Disease." SAC ¶¶ 77-78. While the 2019 warrant "included Mr. Hood's private residential property within its boundaries[,]" Plaintiff does not allege his property was ever searched pursuant to this warrant. *Id.* ¶ 79. Plaintiff alleges that his property is likely to be subject to another warrant because of "CDFA's repeated and recent practice of obtaining and executing general warrants within San Bernardino County," "the discovery of oriental fruit flies or their larvae within a prescribed distance of his property and the large concentration of citrus trees in the area," and Defendants' "policy or practice of disregarding requirements" regarding the warrant. SAC ¶¶ 81-83. The SAC does not allege any further examples or explanation of these purported practices.

Despite these claims, Plaintiff still does not allege how these factors create a substantial risk that Defendants will attempt again to access Plaintiff's property specifically. Furthermore, while Plaintiff's property remained in the Proclamation's Search Area, which expired on July 21, 2025, the warrant did not permit the Department to search the *entirety* of the Proclamation's Search Area. Rather, the warrant authorized the Department to (1) "enter areas of property to remove fruits within 100 meters of sites" where the Department detected fruit flies, or (2) if more than five nearby sites with fruit flies have been discovered within a 60-day period, the Department was authorized to "enter exterior areas of property to remove fruits within a half-mile of these sites." Ex. A, Dkt. No. 61-1. Plaintiff's allegations do not show it is likely that fruit flies will be discovered within 100 meters or a half mile of Plaintiff's property again, nor allege that a future warrant would authorize entry covering a broader section of the Proclamation's Search Area. Although Plaintiff argues in his opposition that this particular fruit fly has "regularly plagued the area for more than sixty-five years" and that "there are similar projects in place for at least six other pest species," Opp'n at 5-6, Plaintiff does not allege any facts that demonstrate that Plaintiff's particular property will be subject to search again.[3]

---

[3] "Absent a sufficient likelihood that he will again be wronged in a similar way, [Plaintiff] is no more entitled to an injunction than any other citizen of [California]; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement officers are unconstitutional." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). Moreover, there are not even any allegations in the SAC of a risk of a similar or otherwise ongoing proclamation; the

To the extent Plaintiff alleges that Defendants have a "policy or practice of disregarding requirements" regarding warrants, Plaintiff fails to allege any facts related to these policies that are not conclusory. Therefore, Plaintiff has not sufficiently alleged that the threatened injury is "certainly impending" or that there is a "substantial risk" of future injury required for injunctive relief.[4]

Furthermore, Plaintiff alleges that his claims fall within the "capable of repetition, yet evading review" exception to mootness. Opp'n at 4. For this exception to apply, the controversy must meet two requirements: "(1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there was a reasonable expectation that the same complaining party would be subjected to the same action again." *Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (citation omitted). "Recurrence of the challenged activity must not be too remote or speculative." *In Def. of Animals v. U.S. Dep't of Interior*, 808 F. Supp. 2d 1254, 1265 (E.D. Cal. 2011) (citing *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 122-23 (1974)). This exception does not apply here because, "the issue here is not whether that claim has become moot but whether [Plaintiff] meets the preconditions for asserting an injunctive claim in a federal forum." *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983) ("The equitable doctrine that cessation of the challenged conduct does not bar an injunction is of little help in this respect, for Lyons' lack of standing does not rest on the termination of the police practice but on the speculative nature of his claim that he will again experience injury as the result of that practice even if continued."). In any event, even if the doctrine were to apply here, Plaintiff has not demonstrated a reasonable expectation that Defendants will seek a warrant to search Plaintiff's property again, as discussed above.

Accordingly, the Court finds that Plaintiff lacks standing for his injunctive relief claims and dismisses those claims against all Defendants.

---

SAC only alleges a different proclamation involving Virulent Newcastle Disease, SAC ¶ 78, which is not alleged to have given rise to a basis to search Plaintiff's property.

[4] Plaintiff cites to *Susan B. Anthony List*, 573 U.S. at 158, and *Meland v. Weber*, 2 F.4th 838 (9th Cir. 2021) in support of his arguments. Those cases involved a preenforcement challenge to existing statutes. Here, by contrast, there is no proclamation in effect and no warrant being sought.

## C. Qualified Immunity

The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity shields an official even if the conduct resulted from "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

To determine whether qualified immunity applies, the court must determine: (1) whether the conduct violated a constitutional right, and (2) "whether the constitutional right was 'clearly established in light of the specific context of the case' at the time of the events in question." *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (en banc) (quoting *Robinson v. York*, 566 F.3d 817, 821 (9th Cir. 2009)). Courts may consider the steps in either order, depending on the facts of the case. *Pearson*, 555 U.S. at 236. The plaintiff must demonstrate that the law prohibited the "particular conduct" in the "specific context of the case" at issue. *Mullenix v. Luna*, 577 U.S. 7, 12 (2015); *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5-6 (2021). The plaintiff "bears the burden of showing that the rights allegedly violated were clearly established." *Shafer v. Cnty. of Santa Barbara*, 868 F.3d 1110, 1118 (9th Cir. 2017) (quotation omitted).

First, Plaintiff argues that "[t]here is no qualified immunity against nominal damages." Opp'n at 17. However, courts in this Circuit have dismissed claims for nominal damages on the basis of qualified immunity. *See e.g. Chavez v. Villanueva*, 699 F. Supp. 3d 844, 856 n.5 (C.D. Cal. 2023); *C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 988 (9th Cir. 2011); *see generally Behrens v. Pelletier*, 516 U.S. 299, 308 (1996) ("the defense is meant to give government officials a right, not merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery, as inquiries of this kind can be peculiarly disruptive of effective government." (cleaned up)). Furthermore, Plaintiff cites to authority in which nominal damages were awarded after qualified immunity defenses were rejected.[5] Finally, Plaintiff's argument that "nominal damages are

---

[5] *See Floyd v. Laws*, 929 F.2d 1390, 1402 (9th Cir. 1991) ("The jury accepted Laws's defense of qualified immunity, but *this defense was not available to the*

more akin to declaratory relief than compensatory (or punitive) damages," suggests that Plaintiff is actually attempting to sue the individual defendants in their official capacity here, not their personal capacity. If so, Plaintiff's claim fails for the reasons discussed above.

     Next, Plaintiff argues that "qualified immunity is unavailable to the Defendants in this case because the illegality of their actions is clearly established." Opp'n at 19. "To be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ballentine v. Tucker*, 28 F.4th 54, 64 (9th Cir. 2022) (citation omitted). Plaintiff alleges that "Defendant Pablo Guererro is employed by the CDFA and, in conjunction with Defendants Dallin and Peterson of the California Highway Patrol, executed the warrant to search Mr. Hood's property." SAC ¶ 12. Plaintiff does not allege that any of these individuals sought the warrant that was issued by a San Bernardino County Superior Court judge, but simply that they executed a warrant duly issued by a court. SAC ¶ 37. While Plaintiff broadly addresses general warrants, Plaintiff fails to cite to any authority[6] with similar facts addressing the execution of the type of warrant in this case, issued by a judge, that has "placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). *See Rivas-Villegas,* 595 U.S. at 6 ("[T]o show a violation of clearly established law, [Plaintiff] must identify a case that put [Defendant] on notice that his specific conduct was unlawful."). Plaintiff therefore fails to carry their burden of "showing that the rights allegedly violated were clearly established[.]" *Shafer*, 868 F.3d at 1118.

---

*City of Sherwood*…we hold that it was an abuse of discretion for the trial court to refuse to enter judgment for Floyd and *against the City of Sherwood*." (emphasis added)); *George v. City of Long Beach*, 973 F.2d 706, 707 (9th Cir. 1992).

[6] The only case cited by Plaintiff does not "deny[] qualified immunity to officers who served a general warrant," as represented by Plaintiff. Opp'n at 19. Rather, *United States v. Holcomb*, 132 F.4th 1118, 1133 (9th Cir. 2025) involved a criminal prosecution and, regardless of whether *Leon*'s good-faith exception requires a different analysis from the standard for granting qualified immunity, the court found that its "existing precedents clearly establish that warrant provisions like the second warrant's dominion and control provision violate a defendant's Fourth Amendment rights." Here, Plaintiff has cited no case that establishes that the purported deficiency was so obvious from the face of the warrant that "any reasonable police officer would have known was constitutionally fatal." *Messerschmidt v. Millender*, 565 U.S. 535, 556 (2012).

Accordingly, Plaintiffs' remaining claims of nominal damages are dismissed with respect to Defendants Ryan Dallin, Pablo Guerrero, and Derrick Peterson sued in their personal capacities.

### D. Leave to Amend

Leave to amend a dismissed complaint should be granted unless it is clear the complaint cannot be saved by any amendment. Fed. R. Civ P. 15(a); see *Manzarek*, 519 F.3d at 1031. However, while there is a "general rule that parties are allowed to amend their pleadings, it does not extend to cases in which any amendment would be an exercise in futility, or where the amended complaint would also be subject to dismissal." *Steckman v. Hart Brewing*, 143 F.3d 1293, 1298 (9th Cir. 1998) (citations omitted). The Court previously granted Plaintiff leave to amend. As Plaintiff did not amend the complaint to properly plead his claims, the Court now finds that an additional amendment would be futile. Thus, the Court GRANTS Defendants' Motion to Dismiss without leave to amend.

The Court need not determine if judicial notice is appropriate in this case. The Court did not rely on the proffered documents in ruling on the instant motion. As such, the Court denies Defendant's request for judicial notice as moot. Dkt. No. 64. Additionally, because Plaintiff is barred from bringing his claims as currently pled against Defendants, his accompanying request for attorney's fees is dismissed. *See Coronel v. City of San Bernardino*, 2024 WL 2107338, at *10 (C.D. Cal. Apr. 12, 2024) ("Because the Court finds that Plaintiff has failed to state her Section 1983 claims against Defendant… it also concludes that she has no viable claim for attorneys' fees against him.").

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss.

**IT IS SO ORDERED.**